**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MILTON J. SMITH, JR. #280378
Plaintiff :

v. : CIVIL ACTION NO. JFM-11-690

DEBBIE SIMMONS[1] :
COMMISSIONER WILLIAM SIMPSON

**MEMORANDUM**

On March 15, 2011, Milton J. Smith, Jr., presently confined within the Maryland Department of Correction at the Maryland Transition Center in Baltimore ("MTC"), filed the above-captioned action using prisoner civil rights forms. Smith seeks both money damages and immediate release from incarceration as well as reduction of the time he must spend on parole supervision.[2] He also seeks injunctive relief mandating job termination for Maryland Parole and Probation Agent Debbie Simmons and Maryland Parole Commissioner William Simpson. Given the relief sought, the action was construed as a hybrid matter seeking both civil rights damages and habeas corpus relief pursuant to 28 U.S.C. § 2241. A dispositive motion addressing both the civil rights and habeas corpus aspects of the case has been filed by defendants/respondents (ECF No. 8), and Smith has filed a reply thereto. ECF No. 10. No hearing is required to resolve the issues raised herein. *See* Local Rule 105.6. (D. Md. 2011).

**Background**

On December 23, 1998, Smith was found in violation of a previously imposed probation and sentenced to one year beginning on September 22, 1998 for acting as a contractor without a license. ECF No. 8, Exhibit A (Affidavit of David R. Blumberg), Attachment 1.1 On February 5, 1999, he received a consecutive fifteen-year sentence for a second-degree sexual offense against a ten-year-old child. *Id.*, Attachments 2 and 5.

Smith was refused parole in 2006 due to the nature and circumstances of the sexual offense. He remained in custody until January 23, 2009, when he was released on mandatory

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of the parties' names.

[2] In his initial pleading Smith indicated his maximum expiration date for an unspecified sentence had been extended improperly from February 4, 2010 to July 26, 2014. ECF No. 1 at 4.

supervision pursuant to the application of 2,003 diminution of confinement credits to the July 19, 2014 maximum expiration date of his term of confinement. *Id*., Attachment 8.

After he was released, Smith was subject to standard conditions of release, as well as multiple special conditions, including drug and alcohol testing and treatment, sex offender treatment, no contact with minors, no contact with the victim or her family, and no possession of child pornography. *Id*., Attachments 6 and 7.

On June 9, 2009, Debbie Simmons, Smith's supervising agent, conducted a visit of Smith's home only to discover that two minor children – one two years old and one seventeen -- were visiting. *Id.*, Attachment 9 at page 1. During an office visit on July 16, 2009, Smith agreed to move from his girlfriend's home because he had no control over who visited. *Id*. at page 3. Smith eventually moved to Mission Possible Ministries at 1932 W. North Avenue in Baltimore. *Id*., Attachment 12 at page 3.

On July 23, 2009, Simmons informed the Commission of Smith's violation of the special condition directing him to have no contact with minor children; given that Smith had agreed to move, however, the agent requested no action other than the imposition of two additional special conditions (comply with the Division's sex offender management program and electronic monitoring). *Id*., Attachment 9. The Commission added the special conditions on July 31, 2009. *Id*., Attachments 10 and 11.

On January 29, 2010, Simmons reported to the Commission that she had learned four days earlier that Smith had moved from 1932 W. North Avenue eight days earlier, without notifying her. *Id*., Attachment 12 at page 3. Smith had been suspended from the Mission because he had not paid his $20.00 weekly rent for three weeks -- despite the fact that he received a monthly disability pension in the amount of $985.00. *Id*. On January 29, 2010, the Commission issued a retake warrant for Smith charging him with the following rule violations: (1) Rule 3, moving without his agent's permission or knowledge; (2) Rule 8, posing a danger to others by virtue of being a child sex offender whose whereabouts are unknown; (3) Rule 9, failing to pay his supervision fees; and (4) Rule 10, by failing to pay his drug and alcohol testing fee. *Id*., Attachment 14.

**Procedural History**

Smith was returned to Division of Correction custody pursuant to the Commission's retake warrant. The Commission offered him a preliminary hearing to determine whether there was probable cause to detain him in custody pending a revocation hearing. *Id*., Attachment 17. On February 22, 2010, Smith waived his preliminary hearing, admitted that he had "violated the terms and conditions of [his] release, but wish[ed] to be heard with respect to disposition." Attachment 17 at 2; *see also* "Notice and Waiver/Preliminary Hearing/Release Violation Hearing" sheet contained in the record and supplemental record. Smith acknowledged that he had not been coerced into admitting to the violations and that no promises had been made to him as to what the commissioner's decision would be. *Id*. He further acknowledged that he understood that his supervising agent did not need to be present at the hearing. *Id*. Finally, he waived his statutory right to be represented by counsel. *Id*.

Smith appeared for a revocation hearing before Commissioner Simpson on March 4, 2010. *Id*., Attachment 18. Simpson confirmed that Smith had waived his right to counsel and that he was admitting to the rule violations with the understanding that he would be given an opportunity to explain the charges and present mitigation for his admitted rule violations. *Id*. at 2-3. Agent Chesley, appearing on behalf of the Division of Parole and Probation, testified concerning Smith's rule violations. *Id*. Simpson then offered Smith the opportunity to present mitigation for his admitted rule violations. *Id*. at 4. Smith claimed he had not moved; he had simply been suspended from the housing program and was planning to return to that address after he paid his overdue rent. *Id*. He claimed further that he told his agent on January 28, 2010, what was happening with his living situation, but she told him that she had already learned of his move and he would "just have to explain it to the Commissioner." *Id*. Smith stated that he was arrested when he reported to his agent on February 4, 2010, despite the fact that he had paid his back rent and already returned to the house where he had been living. *Id*. Smith offered no explanation for his admitted failure to notify his agent that he had moved, even if temporarily, from the Mission Possible Ministries, nor did he explain where he stayed during the time he was not residing at that address.

With respect to the supervision fees, Smith stated that he had paid some of them, but that in November, he had made a "bad judgment" and stopped paying the fees because he had wanted to buy some Christmas presents for his family.[3] *Id*. at 5. He claimed that his agent had never told him that he was required to pay a drug and alcohol testing fee. *Id*. In mitigation, Smith stated that he had worked out a payment schedule with his agent of $44.00 a month, but he again admitted that he had stopped paying the supervision fees in November due to the upcoming holiday season. *Id*. at 7.

Simpson expressed his concern that Smith, who was serving a lengthy sentence for a serious sexual offense against a ten-year-old girl, had had contact with two minor children when he was living with his girlfriend. *Id*. In response, Smith explained that he had returned from the store to find that the two children were visiting his girlfriend, at which point he had immediately left the apartment, and he had met his agent at the door of the building. *Id*. at 8. Simpson accepted Smith's explanation, and did not find him in violation of the special condition of his release that prohibited him from having contact with minor children. *Id*. at 9-10.

Based on the evidence before him, most notably Smith's admissions (*id*., Attachment 17 at 2; Attachment 18 at 2, 4, 5 and 7), Simpson found that Smith had violated: Rule 3, by moving from the Mission without notifying his agent; Rule 8, by posing a danger to others, mainly children, because his whereabouts were unknown; and Rule 10, by failing to pay his supervision fees.[4] *Id*., Attachment 18 at page 10; Attachment 19. Simpson revoked Smith's release and awarded Smith credit ("street time") under Md. Code Ann., Corr. Servs. Art., § 7-401(d)(1), from January 23, 2009 to January 28, 2010.[5] Simpson also revoked 1,300 of Smith's 2,003

---

[3] Chesley testified that Smith had paid only $133.98 in supervision fees. *Id*. at 5.

[4] Chesley testified that Smith did not owe a testing fee. *Id*., Attachment 18 at 6. Simpson did not find that Smith had violated the rule that required him to pay the testing fee. *Id*., Attachment 18 at 6; Attachment 19.

[5] Under that statute, if the order of parole is revoked, the prisoner shall serve the remainder of the sentence originally imposed unless the commissioner hearing the parole revocation, in the commissioner's discretion, grants credit for time between release on parole and revocation of parole.

diminution credits under Md. Code Ann., Corr. Servs. § 7-504(b)(1).[6] *Id*., Attachment 18 at page 10; Attachment 19.

On March 19, 2010, Smith filed a petition for judicial review of the Commission's revocation decision in the Circuit Court for Baltimore City. *Id*., Attachments 20 and 21. The Commission filed a response to the petition, the record of its proceedings, and a supplemental record, which included a paper that had been inadvertently omitted from the record originally filed. *Id*., Attachments 22-24. Following a November 18, 2010 hearing, the court affirmed the Commission's revocation decision based on substantial evidence. *Id*., Attachments 28-29.

Smith sought leave to appeal in the Court of Special Appeals of Maryland. *Id*., Attachment 30. After the appellate court issued a scheduling order, the Commission moved to dismiss the appeal as not allowed by law. *Id*., Attachments 31 and 32. Smith opposed the motion. *Id*., Attachment 33. On March 17, 2011, the appellate court granted the motion to dismiss; the mandate issued on April 18, 2011. *Id*., Attachments 34-35. Smith did not file a petition for certiorari in the Court of Appeals.[7]

**Habeas Corpus Claim**

Smith alleges that the decision of the Maryland Parole Commission to revoke his mandatory release[8] erroneously included a decision to revoke all of his previously earned diminution of confinement credits. He claims that the revocation of his diminution of confinement credits has illegally prolonged his original sentence. Smith has failed to state a cognizable federal claim; consequently, this portion of his case is subject to dismissal.

---

[6] Under that provision, the commissioner presiding at an individual's mandatory supervision revocation hearing may revoke any or all of the diminution credits previously earned by the individual on the individual's term of confinement.

[7] On August 6, 2010, Smith filed an Application for the Issuance of a Writ of Habeas Corpus in the Circuit Court for Baltimore City. *Id*., Attachments 36 and 37. On September 21, 2010, Judge Sylvester B. Cox issued a show cause order directing the Warden of the Maryland Correctional Institution-Hagerstown to respond to the petition on or before October 25, 2010. *Id*., Attachment 38. The case remains pending.

[8] Mandatory supervision or release, under Maryland law, occurs where a sentence is reduced by all diminution of confinement credits earned by a prisoner. *See* Md. Code Ann., Corr. Serv. § 7-101(g). The "credits" or days earned are subtracted from the maximum expiration date of a term of confinement. The prisoner is released early and must remain on parole supervision until the maximum expiration date of the sentence. Mandatory release differs from parole as there is no eligibility hearing required before mandatory release occurs.

Sentence and diminution credit calculation issues generally are issues of state law and do not give rise to a federal question. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pringle v. Beto*, 424 F.2d 515, 516 (5th Cir. 1970); *see also McCray v. Rosenblatt*, 1994 WL 320212 (4th Cir. July 6, 1994) (per curiam) (unpublished). Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice". *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)). A dispute over diminution credits does not rise to this level. *See Willeford v. Estelle*, 538 F.2d 1194, 1197 (5th Cir. 1976). If a "claim . . . rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review." *Wright v. Angelone*, 151 F. 3d 151, 157 (4th Cir. 1998). *See Smith v. Moore*, 137 F.3d 808, 822 (4th Cir. 1998) (refusing to entertain claim that jury instruction misstated South Carolina law).

In addition, it appears that Maryland law requires the rescission of diminution of confinement credits for "a period for which the Maryland Parole Commission has declined to grant credit after revocation of parole or mandatory supervision." Md. Code Ann., Corr. Serv § 3-704 (c)(3); *see also* Md. Code Ann., Corr. Serv. § 3-711 (effect of parole violation on diminution credits). A claim that the Commission has not properly credited Smith for time spent on parole also does not raise a federal claim. *See Williams v. Warden of Maryland Penitentiary*, 120 A. 2d 184 (1956) (failure to exercise discretion to grant credit for time spent on parole did not deprive prisoner of constitutional right).

To the extent that Smith can assert a violation of applicable Maryland law as it pertains to his case, he must make that claim in state court. A review of his claims regarding the diminution of confinement credits is available in the state courts pursuant to Maryland Rule 15-301 *et seq.*, provided that application of the credits to his current term of confinement would entitle him to an immediate release. *See* Md. Rule 15-302(a)(1); *see also Maryland House of Correction v. Fields*, 686 A. 2d 1103, 1105 (1996) (habeas relief is appropriate where prisoner alleged that prison officials' actions were unauthorized; that he was unlawfully detained and was entitled to immediate release).

Smith has no absolute entitlement to appeal a district court's denial of his habeas corpus request. *See* 28 U.S.C. § 2253(c) (1). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make such a

showing, Smith “must demonstrate that reasonable jurists would find the district court’s assessment of the constitutional claims debatable or wrong.” *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)) or that “the issues presented were ‘adequate to deserve encouragement to proceed further.’” *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Smith has failed to demonstrate entitlement to a COA in the instant case.

**Civil Rights Claim**

Under the December 10, 2010 revisions to Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

“The party opposing a properly supported motion for summary judgment ‘may not rest upon the mere allegations or denials of [his] pleadings,’ but rather must ‘set forth specific facts showing that there is a genuine issue for trial.’” *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should “view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness’ credibility.” *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the “affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.” *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

Smith seeks money damages[9] claiming that Simmons committed perjury by submitting a

---

[9] Smith’s claims for injunctive relief requiring his immediate release and the job termination of the named defendants/respondents fails for reasons apparent herein, and shall not be addressed further in this opinion.

sworn report to the Commission alleging he had violated certain conditions of release (that Smith had moved and had failed to pay fees). He further claims that the outcome of his hearing was biased because Simpson and Simmons had met the day before the hearing and conspired to effect his re-incarceration.[10] Smith's bald claim of conspiracy holds no support in the record; indeed, the record provides ample support to justify his re-incarceration and demonstrates that Smith received adequate due process at the hearing where he conceded his guilt.[11]

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (videotape utterly discredited plaintiff's version of facts). Based on the record evidence, defendants/respondents are entitled to summary judgment in their favor.

**Conclusion**

Accordingly, based upon the foregoing reasons, the motion for summary judgment filed by defendants/respondents shall be granted and injunctive relief and money damages denied. A certificate of appealability shall not issue and the Clerk shall be directed to close this case.

September 29, 2011
Date

/s/
J. Frederick Motz
United States District Judge

[10] Smith additionally claims the maximum expiration date of his term of confinement has been improperly extended from February 4, 2010 to July 26, 2014. As noted above, the Commission followed Maryland law, which required recalculation of Smith's term of confinement following revocation of mandatory supervision release.

[11] For example, Smith was acquitted of any charge that he acted improperly when minors entered his girlfriend's apartment or that he failed to pay for certain testing. Sufficient evidence existed, however, to find that he violated other conditions of release.